Our next case for argument is 24-1006, Amatea v. Secretary of the Navy. Good morning, Your Honors. May it please the Court, my name is Arnie Mason. I'm with the law firm of Williams Mullin, and I'm counsel for the appellant Amatea Grimberg JV, a joint venture to build and design the P-166 Energetic Systems Laboratory Complex that you know. As you know, we're here for two issues on the pill, the constructive acceleration claim, and specifically whether we met our burden to establish excusable delay on that constructive acceleration claim, as well as the work hours claim, and whether we met our burden to show that the contracting officer failed to exercise reasonable discretion in denying weekends and in breach of the duty of good faith and fair dealing. Subject to any questions you have, I wanted to go over the key facts that I think set the table for the issues on the pill, and then hit a few of the major primary issues that I think are important to deciding. I mean, I think we know the facts, but can I ask you to start with your second issue first, which is the work hours one? And in particular, what I'm hoping you're going to do is walk me through documentation, because the briefs from the two parties are like ships passing in the night with regard to the level of specificity that was inherent in both the request for extra hours and the response from the Navy denying the extra hours. So maybe, I'm hoping, maybe you can point to me something in the documents that I can look at that shows me, and I've got like a lot of volumes of appendices over here. I'd love to see one of your requests for extra hours. Where is it explained? What reason did you give? What was the level of specificity of that, so that I can understand whether the contracting officer abused her discretion when she denied that request? So if you could show me one of those requests, that would be really great. Yes, Your Honor, certainly. If... Okay. On January... So, and I will give you the sites, Your Honor. On January... This site would be great first, because I want to look at it. Okay. It's a string site, so let me pull it up. Is there a particular page? So APX2793 is where I will start. And that's in volume... Let me see. Is it 2793? 2793. Volume 5? I think it's volume 5. Did you all just file the entire Rule 4 file here? I don't think we did. There's an awful lot of documents here. There is an awful lot of documents, and that's why I apologize for the length of time. I can tell you the description, and I can give you the site, but finding the pages may take up all my time. So you need 2793 to discuss the facts? No, no. I'm prepared to discuss the facts, Your Honor. On January 25th, the... So I'm on page 2793. I'm looking... You said 2793, correct? Yes, there's several pages. 2793 is... I'm just looking at where there is a request here for Saturday work. I'm sorry. I'm not there. 2793 is, unless I'm mistaken, not it.  I'm sorry. I'm going to go to 192. You know what? If you want, why don't we move on, and you can maybe do some rebuttal, and perhaps that's why you have a second chair, and she can find the actual documents, and we can talk about them when you rebuttal? Okay. Does that make sense? Yes, Your Honor. Okay. So why don't you move on then? My understanding is the Navy... I mean, if we're only able to talk broad strokes, the Navy actually granted you three of your requests for Saturdays. So they didn't... The contracting officer did not flat out deny your request to work Saturdays, that you were granted three Saturdays. Is that correct? That's correct. And that also, she granted you 12-hour workdays, extending the eight-and-a-half-hour workday longer at your request also, correct? That is also correct. So it's not the case that the contracting officer just issued a blanket rejection. She, in fact, granted a number of the requests that you made. Your Honor, she did grant a number of the requests we made, that the client made. They also had blanket denials where they said that working on weekends and second shifts was not an avenue available on this project. It was not going to be accommodated. And she gave a reason, right? Her reason was there's increased costs to the Navy because they had to have personnel on site that would require overtime payment that wouldn't be covered by the contract, and that also she personally made a site visit and found the work to not be productive. How is that not an exercise of particularized discretion? Thank you, Your Honor. She did make those statements. The failure to be able to fund inspectors to be there on a Saturday should not be a reasonable basis to deny a request to work on Saturdays on this project because the contract required that the discretion be exercised based upon the justification provided by the contractor. And if budgetary concerns, the inability— See, part of the problem for me is I couldn't find any justification provided by you anywhere. And that's why I wanted you to show me the documents because I knew you were going to make this argument, and that's why I wanted to see the documents and see exactly what reason you gave the contracting officer for needing to work because I think that your requests seem, based on what I could find, to be as broad and nonspecific as you allege their denials were. So that's—I don't see how she didn't. And you can't find the pages. I couldn't find the pages. I mean, the days she gave you on Saturday were because you had a good reason, I think, because there were specific utility work that needed to be done. That sounds like that's a good reason to work on Saturday, and it sounds like she granted those requests. But if you just say you need to work on Saturday because you're not getting your work done, that may not be a very good reason. First, the specific pages for the work hours request are cited in the briefs to the appendix. They are there. And I can go through that in rebuttal, but they are there. One of them asks for the ability to have a second shift without being interrupted by other trades and without the lower productivity of working extended hours, a 12-hour shift, to have a second shift or a Saturday shift specifically to finish the flooring, the drywall, and the painting. Because—now, to your point, the three that they granted were for utility outages for the benefit of the government. They did not want their operations interrupted. They didn't want the power down. So that's why those were granted. But that wasn't for the contractor's benefit. The contractor who bid this job, in their experience, if they are behind the schedule and liquidated damages are being assessed, as they were beginning March 30, 2012, not only do you have this work hours provision, you also have the provision in there that calls for allowing the contractor or requiring the contractor to work extra shifts or extra hours that the government, if they were concerned about inspection costs, they could have simply granted time and then there would not have been a need to accelerate. They could have granted a no-cost time extension if they were concerned about the cost of inspection. But when a contractor is behind schedule and the government has a duty to mitigate damages, as does the contractor, it is reasonable to ask to work Saturdays and second shifts, as was the case in the same base for the same client. And you think you went into this contract with an expectation that even though it said you had to give a specific reason to work on Saturdays or extended hours, that you would just get acceptance of everything you asked for? There was no expectation of acceptance of everything that was asked for. I mean, the board looked at this. They said the evidence you all put forward on how you expected this provision to be interpreted couldn't possibly have been in place at the time of the contract because it was based upon contracts that were bid after this one. Except for the explosives contract, which is on the same site, they agreed that that was a year before and that the provision was materially the same. I mean, it makes your evidence pretty suspect when you point to that one and then two others that couldn't possibly relate to this issue. Well, in the general experience of... You have a really hard standard of review on this question because, first of all, you have to show not just that the contracting officer views for discretion, but there's no substantial evidence for the board's decision that the contracting officer didn't views for discretion. And the contract says May. The contract does say May, but during the period that's really at focus here when the liquidated damages are being assessed after March 29th until substantial completion of the contract, not one single request was granted. We'll respond to... I didn't mean to interrupt, Judge Hughes. And I think the key... Again, it's not really useful to talk about this in the abstract because clearly the contracting officer had a discretion. We know her reasons for denying a lot of these requests. We need to look at a specific request if you gave a specific reason and the contracting officer was, you know, arbitrary or bad faith in denying it. It's not just, oh, we're behind, we need to catch up work. The contract didn't allow you to do that. The contract allowed the contractor... Your position is, seems to me, that once a contractor gets behind and you ask for additional work time on Saturday, you've got to grant it, otherwise the government's acting in bad faith. No, not that you have to grant it. That if you grant maybe 5% of the request, that would have mitigated the delay. That's actually what worked out here, right? 5%. They were 27 days late ultimately. None of the requests during the time period I'm talking about after liquidated damages are assessed, none of the requests are granted here. Had even 5% been granted, that would be 27 shifts, Your Honor, and that would be sufficient to recover the time. Or if the government did not have the funding for the inspection, which turned out to be the case, something not disclosed in the contract, then they could have granted the extended time and there would not be a need for the second shift, and that would be at no cost to the government, but they chose not to while withholding payment for work performed. When you say granted the extended time, I just want to make sure I understand the facts. Do you mean longer than the 12-hour day, or do you mean they should have just not made you complete the contract on the time you were supposed to complete the contract? I mean extending the contract time. Well, see, that doesn't make sense. What's the point of liquidated damages if the government has no choice but to give you an extension? I mean, the whole point of the liquidated damages provision in these contracts is to hold you accountable to a timeline. Yes, Your Honor. However, they ultimately determined that there was a time extension due that they granted after the project was complete, but during the project they withheld that time extension. They assessed liquidated damages, and they denied the right to work a single second shift or a Saturday, and those facts are undisputed. You've wanted to focus on the work hours, and I know I'm supposed to save time for rebuttal to go through the work hours request. Would you like to go to the ESS, or do you not want to go there? Or the constructive acceleration plan, excuse me. Why don't you touch on it briefly so that you can touch on that rebuttal if you need to. How can you make a constructive acceleration claim when you didn't provide an expert with a critical path analysis? So let's talk about that. The Navy did, and the Navy's expert. Yeah, the Navy's expert says none of the delays were due to the critical path. That's not exactly right. The Navy's expert, the Delta report, found that there was no excusable delay from November 2011 going forward, but the Navy's expert also found that the sprinkler plane, for which my client did ask for a time extension and said it was concurrent with the electronic security system, the Navy's expert found that, in fact, the sprinkler plane was the longer path and caused a 62-day delay during window three of its analysis. And the board found that that sprinkler plane, the different site conditions for the water pressure and the sand pipe, was not my client's responsibility, but, in fact, a change to the contract. The Delta report assumed that the issue, the sprinkler plane, was the responsibility of my client. That's specifically what the expert says. That's why the Delta expert didn't allocate 62 days of delay to the government. But a proper application by the board of the Navy's expert analysis, if that's what they're relying on, would require a finding of excusable delay based on the Navy's expert testimony. You mentioned the speaker system, not ESS, which I thought was the focus of the argument here. I mentioned the sprinkler system because Judge Hughes asked about a schedule analysis. But you got compensation for the sprinkler system delays. No. No, there were no compensation for the sprinkler system delays. And there was a... There was changes to the... I mean, I just read the board's decision, the pipes and stuff. They said that was the government's responsibility. They gave you more money, didn't they? They did for the direct cost of the work. But because what we're talking about here on constructive acceleration, if the contractor asked for time that it's due because of excusable delay, and Delta found sprinkler was excusable delay, and that time extension is denied, it was, then that is a constructive acceleration of the work. So it is an alternative theory to excusable delay. I say that because you asked about the expert. So that's Delta. I would also point out that under the doctrine, the SunShip building case calls for no... A contractor cannot be made to pay the liquidated damages for performing extra work. By not granting a time extension during the project, the government effectively made the contractor pay for those liquidated damages during performance. A time extension should have been granted for extra work that was directed after the contract completion date, including the electronic security system, which was finalized in June of 2012, the scope of work, and the sprinkler, which the redesign was approved in April 29, 2012. Both of those events occurred after the contract completion date in SunShip building. Okay, I'm going to restore a little bit of your rebuttal time. Before you sit down, can you just address for me what I'm reading at 39 and 40 of the appendix of the decision below, where they go through problems that affected completion that had nothing to do with ESS or the sprinkler system. And so why isn't that a sufficient basis to affirm the board decision? So it's not because... It is true that this project had other delays that extended it out to September 18, 2012, when it was ultimately completed. To establish a claim for entitlement of constructive acceleration, we have to establish that there is excusable delay. We do not have to establish that that excusable delay explains the entire delay. Because they did not grant a single day past March 29 during the project. So if there's a single delay of excusable delay during project performance that is not granted, that meets the element. So you don't have to prove that ESS or sprinkler would cause the project to complete in September 18, 2012, because the government denied it. But I thought you had to prove... I mean, maybe I just don't understand this law, which is entirely possible, and I'm open to correction. But I thought you had to prove that the excusable delay you're talking about affects the critical path. And if the government can establish that you would not have completed for other reasons, independent of that reason, then you haven't met the critical path portion. So, Your Honor, it's... Am I right about the law? No. There's a detail here. It's entirely possible that the sprinkler could cause 62 days of critical path delay, as the Navy's expert found. And the failure to get the windows done could cause 30 days of delay. I'm making that number up, right? So that doesn't prove that my client's entitled to a full time extension in September 18. But that's not what this claim is. This is not a delay claim. It's a constructive acceleration claim. It's a, I was due a time extension past March 29th, and you denied me any time. And so because you denied that time, I had to accelerate to meet a date that I could not meet, right? The electronic security system and sprinkler were both directed after March 29th. They were both... It came after March 29th. So if it caused 30 days of delay or 62 days of delay, whatever, that's the excusable delay element that I get to meet, because that explains that because I should have been given some time, even if not the full time, they gave me no time. So what did I have to do? What the board found. I understand your argument. Your time is up. I'll restore a little bit of rebuttal time. Let's hear from opposing counsel. Thank you, Your Honor. Mr. Berg, please proceed. Good morning, and may it please the court. Turning to the work hours appeal, as the court referenced, in Appendix 1675, the contract does give the contracting officer substantial discretion here in adjudicating requests for additional time under the performance of this contract. It is then disputed, as the court is aware, there were 12-hour days granted. That is an additional 50% of time per weekday to work on the job, and there was also three Saturdays that were granted as well. In our brief at page 53, we chronicle the substantial evidence that shows that it was, as a matter of fact, a blanket request by the contractor to work every Saturday during the relevant period in 2012. There we cite, for example, to Appendix 804, where the contractor asks to work every Saturday from now until the end of the job, and that is a quote. So is it your view? I mean, let's take a hypothetical. I ask for every Saturday for two months. That's eight Saturdays. And then I'm late by eight days. So clearly, if you had granted me the extra Saturdays, I wouldn't have been late for completion. Is that sufficient to establish that there's a problem here? No, Your Honor, because that would be an unlawful extension of the implied duty of great faith and fair dealing in this case. The express term in the contract at Appendix 1675 granted the contracting officer discretion to decide whether or not to grant requests for additional work hours. The contracting officer undoubtedly exercised her discretion in deciding to give the contractor additional 50% per weekday, 12-hour weekdays, and additionally three Saturdays for particular reasons, as Judge Hughes mentioned, for utilities work. The standing request to work every Saturday, and the contractor's position is that the contracting officer had to grant that request at page- Well, is justification enough to say, I'm going to be eight days late unless you give me these eight additional days? Your Honor, it was never that specific in this case as far as exactly what the time impact was of the failure to grant every Saturday to work. There is a suggestion in the reply brief that granting them the Saturdays would have lessened perhaps the overage the four weeks past the contract completion date to the beneficial occupancy date. However, none of that is supported by a time impact analysis or any expert report. As Judge Hughes also mentioned, the contractor did not proffer an expert report before the board such that the board could award any delay days or decide to what extent, based on appellants showing, there was critical time delay. You directed us to page 804, and I appreciate that you were able to direct us to a page where an actual request seems to have been made. What is this? It looks like it's some sort of almost like documented journal of back and forth between the contractor and the Navy. What is it? These are- What is the document? My understanding, Your Honor, is that these are meeting minutes. Okay, meeting minutes. And there is- Because it says AGJV to submit justification, and then the only thing it says is we are requesting to work every Saturday from now until the end of the job.  I don't see any more specificity than that. And I'm just asking, you obviously know this record better than I do. Is there a lot more specificity somewhere in this record for the requests? I mean, I realize I'm kind of asking you to do what he should have done, and I appreciate that. But I'm hoping you'll be helpful to the court. At appendix- I'm happy to be helpful. At appendix 938, as well, there is a letter in the record, and this we also cite at page 53 of our brief, where AGJV is lamenting to the contracting officer or to a contract specialist, specifically, as of January 25, 2012, the government not approving their standing request to work every Saturday. And this is in the third paragraph on appendix 938. Again, this is substantial evidence for the board's factual finding that there was a blanket request to work every Saturday during the relevant period in 2012. The last site on page 53 of our brief, as well as page of the appendix, is appendix 905, where, again, we have a reference to a standing request to work every Saturday during the relevant period in 2012. As Judge Hughes referenced with counsel opposite, the contracting officer's discretion was documented. The contracting officer at appendix 277 to 278 in her declaration before the board weighed the benefits of granting additional Saturdays against the cost to the government. The costs to the government were substantial. There were overtime costs. There were staffing resource constraints on the contracting officer that she notes in that declaration. And that is substantial evidence for the reasonableness of having denied the standing request to work every Saturday during 2012, the relevant period under this contract. And just so I understand the specifics, it would have cost the government more money because they would have had to pay someone, not just even, they would have to pay someone overtime to be there on a Saturday who wouldn't otherwise be there. And they were already incurring, the government was, additional expense to administer the contract having already granted 12-hour days during the week, as opposed to the standard eight-hour days the contract contemplated. So this would have been additional time on top of what the government already decided to grant the contracting officer in her reasonable discretion. At the end of the day, at the opening brief, page 38, the position of the contractor in this case is that the government was required to, quote, do whatever is necessary to enable it to perform. And that is wholly at odds with the actual language of the specification we're talking about at appendix 1675 that grants the contracting officer substantial discretion to adjudicate these types of requests. That substantial evidence is in the record for this proposition is exhaustively weighed in the board's opinion. Could I ask you to talk about the excusable delay piece now?  Is that okay? I mean, if you're done with this piece. Yes. Okay. Moving on to the constructive acceleration claim, the contractor recognizes that it is an essential element of a constructive acceleration claim to prove as a factual matter that they have encountered excusable delay. It is also undisputed, we believe, that to recover for excusable delay, it needs to be a delay not caused by the contractor and also affecting the critical path, meaning affecting the overall contract completion date. And that's what our case says. Sauer and other cases say that.  Sauer and as well, we've cited other opinions in there as well, but Sauer versus Danzig is one that we cite. In this case, at appendix 64, 65, and 63, the board exhaustively goes through the evidence and concludes that there is no evidence of excusable delay in this matter because past the as-adjusted contract completion date of August the 22nd of 2012, until the four weeks later in September 18, 2012, when you have beneficial occupancy, substantial completion, there is no evidence that the contractor, having done ESS work or having done fire sprinkler work, caused them to be working past the contract completion date. But rather, as the board chronicles, there was efforts to finish the windows, the roof, the HVAC system during that period that had nothing to do with the ESS or the fire sprinkler issue that they allege caused delay. Again, to Judge Hughes' point, the contractor failed to put forth an expert delineating what and whether the delays that they allege before the board affected the critical path. The board properly weighed the expert report of the government, Mr. Reichard. Contrary to the arguments of opposing counsel, the board did not abuse its discretion in considering Mr. Reichard's analysis. The board did not inappropriately credit a delay attribution at odds with the government's findings. Particularly, the board, Mr. Reichard attributed 62 days of delay to the contractor for the sprinkler system. The board, yes, found a differing site condition and a change regarding the sprinkler system. The board did not credit that portion of Mr. Reichard's opinion. The board made no error there. I thought one of the rationales for the Board of Contract Appeals was that if you take the amount of time, the excusable delay for the sprinkler and the ESS, that was less than the extensions, or at least equal to the extensions that the government and the Navy granted. The board does note at the end of the opinion, Your Honor, I believe at Appendix 64, that even if there was delay caused by the ESS or the sprinkler system, there's no way that it was more time than the government granted. In this case, after contract completion had finished in September of 2012, the government did release 146 days, 91 plus 55, of liquidated damages and adjusted the contract completion date accordingly. That resulted in the contractor receiving over $750,000 extra remission on the liquidated damages piece. The board did not err in exhaustively weighing the evidence. There is no legal issue in this case, but rather it is a substantial evidence question, and substantial evidence supports the board's conclusion to deny both the work hours appeal and the constructive acceleration appeal. Okay, thank you, Mr. Berg. Thank you. Mr. Mason, I'll give you two minutes of rebuttal time. Thank you, Your Honor, and I appreciate the additional time. On APPX 2972, Volume 6. 2972, Volume 6. 2972, Volume 6. I mean, this letter is the same letter that the government counsel just pointed us to on a different page, isn't it? Where it says the exact same thing. So this letter is important. It's January 25, 2012, two months before the contract completion date. It provides a summary of the different requests up to that point in time to work weekends, and it provides an explanation as to why. And the main reason why is the job is behind. It talks about only- Look, the problem with your argument is that if that's a good enough reason to make it arbitrary for the CO to deny the weekend request, it basically grants you the weekend request automatically. You say, oh, we're behind. We need to work Saturdays. And the CO comes back and says, well, you can't work Saturdays because we don't have the funding to provide personnel to monitor your work and blah, blah, blah. That can't be a good enough reason to find an abuse of discretion. Otherwise, there would basically be no reason to have to be given other than we're behind. Well, I think from my client's perspective, when a job is behind based on disputed issues of responsibility for delay and the contract allows a way to recover that time by the contractor at his own expense working a second shift or a Saturday. That's not what that clause says, though. The clause gives the contracting officer discretion to determine it. And not only did the contracting officer determine that it would not be in the interest of the government because of the financial impact. The contracting officer determined that the one day she visited, no productive work was being done anyway. Yes, that's what she said. The one day that she visited, there was no productive work. So that's substantial evidence. That is completely contradicted and undermined by the daily report that reflects the work that was done. We're not reweighing the evidence. We look at substantial evidence. And the board found her testimony credible. And that's substantial evidence. On the issue of excusable delay and critical path analysis, when you're talking about a critical path and whether it extends the project completion date, you don't have to prove 100% of the delay is one party's responsibility. And I go to the sprinkler example because the Navy's expert found that to be 62 days of delay on the critical path. That's sufficient for establishing the element of excusable delay for constructive acceleration. That alone is the proper basis to reverse the board's findings on excusable delay. Okay, counsel, I thank you. I thank both counsel. This case is taken under submission.